# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MELISSA WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-1066-TMP |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER REVERSING THE COMMISSIONER'S DECISION

Before the court is plaintiff Melissa Willis's appeal from a final decision denying her application for disability insurance under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34, filed on March 20, 2020. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). (ECF No. 13.) For the reasons below, the Commissioner's decision is REVERSED and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   FINDINGS OF FACT

Plaintiff Melissa Willis applied for disability insurance benefits under Title II of the Act on January 20, 2017. (R. at 20, 189-95.) Willis's application alleged that she has been disabled since November 27, 2016. (R. at 189.) According to Willis, she suffers from hypertension, degenerative disc disease, impingement

syndrome of her left shoulder, osteoarthritis, and obesity. (ECF No. 22 at 2.) Willis's application was denied initially on March 21, 2017, and upon reconsideration by the Social Security Administration ("SSA") on October 6, 2017. (R. at 62-72, 89.) At Willis's request, a hearing was held before an Administrative Law Judge ("ALJ") on December 12, 2018. (R. at 38, 122.) Willis and vocational expert David Boatner, M.Ed., testified at the hearing. (R. at 39.)

During the hearing, Willis testified that she has suffered back injuries that have caused nerve problems in her lower back and legs, at least three of which occurred at work and required surgery. (R. at 42, 45-46.) Additionally, she testified that she has arthritis in various parts of her body and that her injuries have prevented her from being employed. (R. at 42-43.) She is currently taking Flexeril (a muscle relaxer), Tramadol (a pain reliever), and Lasix (for her joint swelling). (R. at 48-49, 55-56.) A side effect to her Lasix is that she has to go to the bathroom approximately every fifteen or twenty minutes. (R. at 53.) According to Willis, she has a restriction on her back such that she can lift no more than twenty-five pounds from the floor, no more than twenty pounds with her shoulder, and no more than five pounds over her head. (R. at 43.) On questioning from her attorney, Willis testified that she can occasionally pick up twenty-five pounds but that she can only lift that weight "maybe

- 2 -

three" times a day. (R. at 47.) She has trouble bending over because of her back and legs. (R. at 47-48.) Because her legs and ankles are swollen, she testified that she cannot walk the length of a city block. (R. at 48-49.) She testified that she cannot reach overhead with her left shoulder and that she can hardly put any weight on it because when she picks things up she feels a "real sharp pain, like, burning, sharp sensation." (R. at 51-52.) Because of her pain, her granddaughter helps her once a week with cleaning and housework. (R. at 53.)

She testified that she has worked in warehouses where she was asked to lift at least seventy pounds for her entire career. (R. at 43.) She has since attempted to obtain office work but has consistently been denied any opportunities because she does not have any training. (R. at 43-44.) She testified that she has also struggled to find employment because of her medications, which cause her to "just fall asleep during the day" and cause her to "go to the bathroom a lot." (R. at 44.) She sleeps only an hour a night, which she testified causes her to take "a couple" thirty-minute naps during the day. (R. at 55.)

Boatner testified at the hearing that, according to the Dictionary of Occupational Titles ("DOT"), Willis's prior work experience included roles as a warehouse worker (an unskilled job requiring a medium level of strength) and as a shipping clerk (a

skilled job requiring medium strength). (R. at 55-56.) The ALJ

posed a hypothetical for Boatner, asking him

> to assume a hypothetical individual the claimant's age,
> education, and the past jobs [] described. Further
> assume, she's limited to the light exertional level, no
> ladders, ropes, scaffolds, or hazards, the right upper
> extremity, only occasional overhead reaching, and the –
> I'm sorry, the left upper extremity, only occasional
> overhead reaching of the left upper extremity, only
> occasional push/pull. Can that hypothetical individual
> perform any of her past work as actually performed or
> generally performed?

(R. at 57.) Boatner testified that such an individual could not

work as either a warehouse worker or a shipping clerk, but that

the individual could work about 800 different unskilled, light

level jobs. (R. at 58.) Boatner specifically identified

"tester/inspector," "injection-molding-machine tender," and

"laundry sorter" as jobs that the hypothetical individual could

perform. (R. at 58.) Boatner testified that this assessment was

consistent with the DOT. (R. at 58.)

On cross-examination, counsel for Willis asked Boatner if

these jobs required using both hands, to which Boatner testified

that "[i]f a person is limited to occasional use of either upper

extremity, it would rule out the occupational base of unskilled,

light job titles." (R. at 59.) Counsel for Willis then asked if

any of these jobs required the ability to stay on task and if a

worker would be able to keep these jobs if he or she was required

to leave his or her workstation every thirty minutes throughout

the day. (R. at 59.) Boatner testified that all of these jobs require acute concentration and that a worker would likely be unable to maintain employment if he or she were required to leave his or her workstation every thirty minutes. (R. at 59-60.) According to Boatner, the jobs all require a combination of standing and walking. (R. at 60.) As a result, the worker would not be able to perform the jobs if he or she could not stand for more than half of the time. (R. at 60.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Willis was not disabled from November 27, 2016, through the date of his decision. (R. at 30.) At the first step, the ALJ found that Willis had not "engaged in substantial gainful activity since November 27, 2016[.]" (R. at 22.) At the second step, the ALJ found that Willis suffers from the following severe impairments: degenerative disc disease of the lumbar spine, impingement syndrome of the left shoulder, osteoarthritis, and obesity. (R. at 22.) In determining Willis's severe impairments, the ALJ also considered that Willis has been assessed with hypertension but that this condition is "well-controlled with medication" and thus non-severe, and that she has been treated for cardiomegaly since August 2016 but that this is also "controlled with medication management treatment" and does "not require any specialized cardiovascular related medical care," making this condition non-

severe. (R. at 23.) The ALJ also noted she has had minimal treatment for her alleged asthma and chronic obstructive pulmonary disease and that physical examinations have not shown any severe impairments or limitations stemming from her carpal tunnel syndrome. (R. at 23.) Additionally, the ALJ considered that Willis has been treated for a generalized anxiety disorder but found that it "does not cause more than minimal limitation in [Willis's] ability to perform basic mental work activities and is therefore non-severe." (R. at 24.)

At the third step, the ALJ opined that Willis's impairments (or any combination thereof) do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.) Accordingly, the ALJ had to then determine whether Willis retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Willis] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: no ladders, ropes, scaffolds or hazards; the left extremity only occasional overhead reaching and occasional push/pull.

(R. at 27.) In making this determination, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 26.) The ALJ thus found that Willis's alleged severe limitations were not supported by the record and

noted that the restrictions contained in her medical files were "consistent with light work activity."[1] (R. at 26-27.)

At Step Four, the ALJ found that Willis was unable to perform any of her past relevant work. (R. at 29.) Next, in evaluating Step Five, the ALJ considered that Willis has at least a high school education and she is closely approaching advanced age to find that "there are jobs that exist in significant numbers in the national economy that [Willis] can perform."[2] (R. at 29.) Specifically, the ALJ found that Willis could enter the workforce as a tester inspector, an injection molding machine tender, or a laundry sorter. (R. at 31.) As such, on February 22, 2019, the ALJ entered a decision denying Willis's request for benefits. (R. at 30-31.) On January 13, 2020, the SSA's Appeals Council denied Willis's request for review. (R. at 1.) The ALJ's decision then became the final decision of the Commissioner. (R. at 1.)

---

[1]The ALJ considered medical records from her surgery on her left shoulder in February 2016, her physical therapy with Sports Orthopedics and Spine in March 2016, a consultative examination by Dr. Donita Keown, M.D., in August 2017, a physical examination by Lauderdale Community Hospital in November 2017, an electromyogram and physical examination at Bingham Nerve and Muscle in December 2017 and August 2018, an appointment at the Campbell Clinic in September 2018, treatment records at Ripley Medical Clinic in May, September, October, and December 2018, her obesity, and reports by Disability Determination Section ("DDS") medical consultants. (R. at 26-29.)

[2]Willis testified at the hearing that she completed the eleventh grade and that she earned her General Equivalency Diploma ("GED") in either 1994 or 1995. (R. at 45.) Willis was 52 years old at the time of the hearing. (R. at 45.)

On March 20, 2020, Willis filed the instant action. (ECF No. 1.) In her brief filed on January 8, 2021, Willis argues that the ALJ did not have substantial evidence to support his RFC determination and that the ALJ disregarded the vocational expert's opinion on cross-examination that Willis was unable to perform any work when her physical limitations are taken into account. (ECF No. 22 at 7-9.) The Commissioner filed a response on March 9, 2021, arguing that the ALJ had substantial justification to support his decision because it was based on a thorough review of Willis's medical history and he incorporated an opinion by the vocational expert that was based on a hypothetical that was consistent with objective medical evidence. (ECF No. 25 at 6-12.) On March 30, 2021, Willis filed a reply, arguing that the ALJ "stopped short of including the evidence presented at trial and in the record" in his analysis. (ECF No. 28 at 2.)

## II.   CONCLUSIONS OF LAW

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the

Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d

709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is

on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to Social Security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return

to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C.   The ALJ's RFC Determination

Although Willis's brief does not delineate her arguments on appeal, it appears that Willis first contends the ALJ erred in how he determined her RFC. A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must assess the claimant's RFC based on all of the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996) ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to

form an 'assessment of [her] residual functional capacity.'" Webb
v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004)
(alteration in original) (quoting 20 C.F.R. § 416.920(a)(4)(iv)).
In making this determination, the ALJ may consider both objective
medical evidence of a severe medical condition and the credibility
of the claimant's subjective complaints. See Steagall v. Comm'r of
Soc. Sec., 596 F. App'x 377, 381 (6th Cir. 2015); Schmiedebusch v.
Comm'r of Soc. Sec., 536 F. App'x 637, 649 (6th Cir. 2013).
"Credibility determinations regarding the applicant's subjective
complaints rest with the ALJ and are afforded great weight and
deference as long as they are supported by substantial evidence."
Curler v. Comm'r of Soc. Sec., 561 F. App'x 464, 473 (6th Cir.
2014) (citing Torres v. Comm'r of Soc. Sec., 490 F. App'x 748, 755
(6th Cir. 2012)). While ALJs may not "cherry pick[] evidence,"
they may "neutrally . . . weigh[] the evidence." White v. Comm'r
of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009). Moreover, because
the court must affirm the decision of the ALJ if there is
substantial evidence to support his decision, it is not enough for
the claimant to prove that substantial evidence supports his or
her preferred RFC as well. Rogers v. Comm'r of Soc. Sec., 486 F.3d
234, 241 (6th Cir. 2007); Jones v. Comm'r of Soc. Sec., 336 F.3d
469, 477 (6th Cir. 2003).

Willis argues that the ALJ's RFC determination lacks
substantial evidence because he did not consider her "asthma,

- 13 -

chronic pain, tiredness from poor sleep, low concentration, frequent need to be absent from the work station, [her] inability to stand for a length of time because of edema and [her] limitations on lifting and carrying more than 20-25 [pounds], lifting over 5 [pounds] with her left shoulder and working overhead." (ECF No. 22 at 8.) This argument boils down to an assertion that, in Willis's view, the record supports a finding that she cannot perform even light work with additional limitations.

While it may be true that if the evidence had been weighed differently that the ALJ's RFC determination might have been different, the Sixth Circuit has instructed courts that their role is not to "weigh evidence, assess credibility, or resolve conflicts in testimony — that's the ALJ's job." Dyson v. Comm'r of Soc. Sec., 786 F. App'x 586, 588 (6th Cir. 2019) (citing Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990)). Therefore, the ALJ's RFC determination must stand if it is backed by substantial evidence. See id. (citing Rogers, 486 F.3d at 241; Jones, 336 F.3d at 477).

SSA regulations define "light work" as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b). The ALJ found that Willis has the RFC to perform light work, provided that she has additional limitations, such as not using ladders, scaffolds, ropes, or hazards, and only occasionally using her left upper extremity for overhead reaching, pushing, and pulling. (R. at 26.) In so finding, the ALJ extensively reviewed Willis's medical and treatment history from 2016 to the present, thoroughly explaining the results of her visits to various healthcare providers and noting that the record was consistent with the SSA definition for light work activity. For instance, the ALJ noted that treatment notes from Sports Orthopedics and Spine in November 2016 recommended that she lift no more than twenty-five pounds, only perform occasional overhead work with her left arm, and that she has a 7% impairment of her left upper extremity and a 4% whole person impairment due to her left shoulder. (R. at 27.) Likewise, based on a consultive examination in August 2017, Dr. Keown concluded that Willis could "sit six to eight hours a day, walk or stand four to six hours, lift 25 to 30 pounds occasionally and 10 to 15 pounds on a more frequent basis and she did not require handheld assistive devices." (R. at 27.) Additionally, the ALJ opined that the computerized tomography scans and X-rays in the record showed only mild abnormalities, that her physical examinations were otherwise unremarkable, and that her obesity would limit her to, at most, light work. (R. at 27-28.); see Stewart v. Comm'r of Soc. Sec.,

811 F. App'x 349, 354 (6th Cir. 2020) ("[A] judge should . . . consider a claimant's obesity 'in combination with other impairments' when proceeding through the normal five-step disability analysis.") (quoting Shilo v. Comm'r of Soc. Sec., 600 F. App'x 956, 959 (6th Cir. 2015)); Downs v. Comm'r of Soc. Sec., 634 F. App'x 551, 553 (6th Cir. 2016) ("This diagnostic evidence - which reveals mostly mild-to-moderate findings and no significant degeneration - offers support to the ALJ's RFC determination."). Further, the ALJ elected to give only partial weight to the opinions of DDS reviewers because he found that their conclusions (that she could perform reduced medium work) overstated her functional capacity based on the record. (R. at 28-29.) In short, the ALJ's RFC determination had a sufficient basis to satisfy the substantial evidence standard. See Dyson, 786 F. App'x at 590 ("We regularly find that substantial evidence supports a no-disability determination when the ALJ relies primarily on independent medical advice consistent with the claimant's medical records.").

Although Willis testified at the hearing that her limitations are far more severe than what her medical records show, the ALJ found that "the severity of limitation alleged by [Willis] is not supported by the record." (R. at 26.) Indeed, "[a]n ALJ may discount a claimant's credibility when the ALJ finds contradictions among the medical reports, claimant's testimony,

and other evidence." Steagall v. Comm'r of Soc. Sec., 596 F. App'x 377, 381 (6th Cir. 2015) (internal quotations and citations omitted). Here, the ALJ noted that Willis's testimony as to the severity of her impairments (specifically that she cannot perform work activity at any level and that he back pain is chronic and severe) was contradicted by objective medical evidence showing, at most, only mild impairments. (R. at 29.); Curler, 561 F. App'x at 473 ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor recommended functional limitations."). Moreover, outside of her testimony at the hearing, Willis's alleged symptoms of having to go to the restroom often and nap every half hour are not supported by objective evidence in the record to the extent that they should meaningfully alter her RFC.[3] Van Winkle v. Comm'r of Soc. Sec., 29 F. App'x 353, 357 (6th Cir. 2002) ("An ALJ need not fully credit subjective complaints where there is no underlying medical basis."). As such, the ALJ considered Willis's treatment history (including objective medical evidence and

---

[3]In her brief, Willis cites to a neurology report from the Jackson Madison County General Hospital that states that her activity tolerance is "Feel tired/fatigued/sleepy during day time." (R. at 718.) Additionally, the record shows that she is prescribed Lasix, which causes increased urination.

physician opinions) and her testimony to conclude that Willis could return to light work with some limitations. Because there is "more than a scintilla of evidence" – enough that "a reasonable mind might accept as adequate" – to support the ALJ's RFC determination, the court finds that this is not grounds for reversal. Rogers, 486 F.3d at 241 (quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)); see also Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.").

D.    **The Vocational Expert**

Willis's second argument on appeal is that the ALJ's decision must be remanded because the ALJ did not follow the vocational expert's opinion on cross-examination that Willis's limitations rendered her unable to work any jobs in the national economy. While not stated as such, this amounts to an argument that the ALJ's decision at Step Five – whether a significant number of jobs in the national economy exist that Willis can perform – lacked substantial evidence because the expert's testimony was unreliable.

"The Commissioner has the burden at step five of the disability analysis of showing that there are a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile." Collins v. Comm'r of Soc. Sec., 357 F. App'x

663, 670 (6th Cir. 2009). "This mandates the Commissioner to 'make a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs.'" Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 451 (6th Cir. 2017) (internal alterations omitted) (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 238 (6th Cir. 2002)). It is well settled that "[a] vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.'" Thomas v. Comm'r of Soc. Sec., 550 F. App'x 289, 290 (6th Cir. 2014) (quoting Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001)). When crafting a hypothetical individual to pose to a vocational expert, the "ALJ is required to incorporate only those limitations that he or she accepted as credible."[4] Lester v. Soc. Sec. Admin., 596 F. App'x 387, 389-90 (6th Cir. 2015) (citing Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010) and Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)); see also Brantley v. Comm'r of Soc. Sec., 637 F. App'x 888, 897 (6th Cir. 2016) ("[A] hypothetical need not include a comprehensive list of a claimant's medical conditions"). In

---

[4]For this reason, it was proper for the ALJ to omit Willis's alleged restroom and mid-day sleeping needs from his hypothetical for the vocational expert.

forming his or her analysis at Step Five, an ALJ must evaluate the reliability of a vocational expert's opinion on a case-by-case basis. <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1157 (2019).

During the hearing, the ALJ posed a hypothetical individual to the vocational expert. The ALJ's hypothetical individual mirrored a person with Willis's RFC, asking the vocational expert

> to assume a hypothetical individual the claimant's age, education, and the past jobs [] described. Further assume, she's limited to the light exertional level, no ladders, ropes, scaffolds, or hazards, the right upper extremity, only occasional overhead reaching, and the – I'm sorry, the left upper extremity, only occasional overhead reaching of the left upper extremity, only occasional push/pull. Can that hypothetical individual perform any of her past work as actually performed or generally performed?

(R. at 57.) In response, the vocational expert testified that there existed ample jobs that the individual could perform, for instance a "tester inspector," an "injection molding machine tender," and a "laundry sorter." (R. at 58.) The vocational expert further testified that these three jobs were representative of about 800 potential job titles that would fit the ALJ's hypothetical. (R. at 58.) The ALJ based his conclusion that Willis was not disabled on this testimony.

However, this finding overlooks a critical inconsistency within the vocational expert's testimony. On cross-examination, the vocational expert testified that "[i]f a person is limited to occasional use of either upper extremity, it would rule out the

occupational base of unskilled, light job titles" because each job recommended by the vocational expert required "bilateral upper extremities." (R. at 59-60.) This statement by the vocational expert directly contradicts his earlier opinion that the ALJ's hypothetical individual could perform unskilled, light work in the national economy, as the ALJ's hypothetical individual could only occasionally use his or her left upper extremity. (R. at 57-58.) Additionally, the ALJ incorporated this physical limitation into his RFC determination, finding that Willis was limited to "occasional overhead reaching and occasional push/pull" with her left upper extremity. (R. at 27.) Consequently, the vocational expert testified both that a person with Willis's RFC could perform around 800 different job titles and also that a person with Willis's RFC could perform none of them.

While an ALJ is not required to rely on "alternate hypothetical[s] based on [claimant]'s preferred theory of the case," Blythe v. Berryhill, No. 18-1028-TMP, 2019 WL 4277000, at *10 (W.D. Tenn. Sept. 10, 2019), several district courts within the Sixth Circuit have found that an ALJ commits reversible error where he or she "relie[s] on [a] vocational expert's initial, confident testimony about the jobs the claimant could perform without recognizing the expert's conclusions collapsed on cross examination." Lucy v. Saul, No. 19-1083-TMP, 2020 WL 1318803, at *10 (W.D. Tenn. Mar. 20, 2020); see also Reed v. Comm'r of Soc.

Sec., 2021 WL 928401, at *3-5 (S.D. Ohio Mar. 11, 2021) (vacating a decision by the ALJ because it relied on a vocational expert's testimony that the claimant "would be able to perform the requirements of specific occupations such as housekeeping cleaner, folder, and inspector" but on cross-examination the "[claimant's] ability to perform these jobs was brought into question by the vocational expert's own testimony"); Wyczlinski v. Astrue, No. 3:09-CV-481, 2011 WL 798135, at *6-8 (S.D. Ohio Mar. 1, 2011) (reversing an ALJ's decision because "the vocational expert's testimony [was] so flawed that it [was] of little or no value" where the expert proposed certain jobs for the claimant but "immediately retreated from this position" on cross-examination). In short, a finding based on unreliable vocational expert testimony "is equivalent to a finding that is not supported by substantial evidence and must be vacated." Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1282 (11th Cir. 2020) (quoting Chavez v. Berryhill, 895 F.3d 962, 968 (7th Cir. 2018)).

After the ALJ found that Willis was unable to return to her previous employment, "[t]he Commissioner ha[d] the burden at step five of the disability analysis of showing that there are a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile." Collins, 357 F. App'x at 670 (citing Jones, 336 F.3d at 474). An important aspect of determining if significant jobs exist is "the reliability of the

vocational expert's testimony." <u>Hall v. Bowen</u>, 837 F.2d 272, 275 (6th Cir. 1988). Here, the ALJ relied exclusively on the vocational expert's testimony that someone with Willis's RFC (which includes "only occasional overhead reaching of the left upper extremity, only occasional push/pull") could work as a tester inspector, an injection molding machine tender, and a laundry sorter. (R. at 29-30, 57.) This finding, however, overlooks the vocational expert's contradictory testimony that a person who is limited to occasional use of either extremity could not perform "the occupational base of unskilled, light job titles." (R. at 59.) Therefore, the ALJ's decision at Step Five is not supported by substantial evidence.

### III.    CONCLUSIONS

For the reasons above, the Commissioner's decision is not supported by substantial evidence and is REVERSED. This case is remanded under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

/s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

April 29, 2021
Date